IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - x
                               :
In re:                         :  Chapter 11
                               :
AURORA FOODS INC.,             :  Case No. 03-13744 (MFW)
    et al.,                    :
                               :  Jointly Administered
              Debtors.         :
                               :  Obj. Due:  12/31/03 @ 4:00 p.m.
                               :  Hrg. Date: 1/9/04 @ 11:00 a.m.
- - - - - - - - - - - - - - - x
```

**DEBTORS' APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 329, FED. R. BANKR. P. 2014 AND 2016, AND DEL. BANKR. LR 2014-1 AND 2016-1 AUTHORIZING EMPLOYMENT AND RETENTION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS BANKRUPTCY COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

Aurora Foods Inc. ("Aurora" or the "Company") and its subsidiary, Sea Coast Foods, Inc. ("Sea Coast"), debtors and debtors-in-possession in the above-captioned cases (together, the "Debtors"), hereby apply for entry of an order under 11 U.S.C. §§ 327(a) and 329, Fed. R. Bankr. P. 2014 and 2016, and Rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware authorizing the employment and retention of Skadden, Arps, Slate, Meagher & Flom LLP and its affiliated law practice entities (collectively, "Skadden" or the "Firm"), effective as of the Petition

Date, under a general retainer as the Debtors' bankruptcy counsel.  In support of this application, the Debtors rely on the Declaration of J. Gregory Milmoe, sworn to on December 9, 2003 (the "Milmoe Declaration"), a copy of which is being submitted herewith.  In further support of this application, the Debtors respectfully represent as follows:

**BACKGROUND**

A.  The Chapter 11 Filings

1.  On December 8, 2003 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code").  The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.

2.  No official committee has yet been organized to serve in these cases, and no request has been made for the appointment of a trustee or examiner.

3.  The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 329, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

B. <u>The Debtors Businesses</u>

5. Aurora is a publicly-owned Delaware corporation with facilities in St. Louis, Missouri; Jackson, Tennessee; Erie, Pennsylvania; and Mattoon and St. Elmo, Illinois. Aurora employs approximately 1,500 individuals, all within the United States. On April 1, 1999, Aurora acquired 100% of the stock of Sea Coast, a Washington corporation. Aurora and Sea Coast have historically operated as one entity, issuing consolidated financial statements and filing consolidated tax returns.

6. Aurora produces and markets premium brand food products including the Duncan Hines line of cake mixes and ready-to-serve frosting; Lender's bagel products; Mrs. Butterworth's, Log Cabin, and Country Kitchen syrup products; Van de Kamp's and Mrs. Paul's frozen seafood products; Aunt Jemima frozen breakfast products;

3

Celeste frozen pizza; and Chef's Choice frozen skillet meals.

7. The Debtors recently entered into an agreement and plan of reorganization and merger, pursuant to which Aurora will undertake a comprehensive restructuring transaction in which it will be combined with Pinnacle Foods Holding Corp.

8. On July 11, 2003, Aurora entered into a Stock Purchase Agreement (the "SPA") with J.W. Childs Equity Partners III, L.P. ("JWC"), a Boston-based private equity firm, providing for, among other things, an investment of cash in exchange for a certain percentage of the equity in a reorganized Aurora.

9. In mid-August, the negotiations on the debtors' pre-negotiated restructuring plan took a different direction when Hicks, Muse, Tate & Furst Inc. issued a press release informing of their intentions to sell Pinnacle Foods Holding Corporation ("Pinnacle") to an investment arm of J.P. Morgan Chase & Co.

10. On November 25, 2003, the Debtors entered into an Agreement and Plan of Reorganization and Merger (the "Merger Agreement") with Crunch Equity Holding, LLC ("CEH LLC"), a Delaware limited liability company owned

by J.P. Morgan Partners LLC, JWC, and C. Dean Metropoulos and Co. Under the terms of the Merger Agreement and upon the consummation of the plan of reorganization to be filed with the Court, Aurora will be combined with Pinnacle, an indirect wholly-owned subsidiary of CEH LLC. After the closing of the merger, the combined Aurora/Pinnacle business (the "Reorganized Company") will be an indirect wholly-owned subsidiary of CEH LLC.

11. As a result of the merger, Pinnacle will be merged into Aurora. Each share of Pinnacle common stock will be exchanged for one share of common stock in the Reorganized Company.

## RELIEF REQUESTED

12. By this application, the Debtors seek to employ and retain Skadden, as of the Petition Date, to represent them as their bankruptcy counsel in connection with the filing of their chapter 11 petitions and the prosecution of their chapter 11 cases.

13. Accordingly, the Debtors respectfully request entry of an order under Bankruptcy Code sections 327(a) and 329, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1 authorizing each of them to employ and retain Skadden as the Debtors' bankruptcy

counsel under a general retainer to perform the legal services that will be necessary during these cases, as more fully described below.

**BASIS FOR RELIEF**

14. Beginning in May of this year, Skadden was retained to provide legal advice to the Debtors in connection with its continuing review of strategic alternatives available to the Debtors. The Debtors' engagement of Skadden was memorialized in an engagement letter (the "Engagement Agreement"), dated May 1, 2003, a copy of which is attached to the Milmoe Declaration as Exhibit A.

15. Before May of this year, Skadden performed legal work for the Debtors in connection with certain restructuring matters in 2000. In 2002, Skadden advised a special committee of disinterested directors in connection with Aurora's obtaining a loan from its affiliates.

16. In connection with its representation of the Debtors, Skadden has advised the Debtors with respect to the available strategic alternatives and become familiar with many of the potential legal issues that may arise in the context of the Debtors' chapter 11 cases. To that end, Skadden successfully assisted the Debtors in, among other things, the negotiation, and subsequent

execution of, an agreement and plan of reorganization and merger (the "Merger Agreement") with Crunch Equity Holding, LLC ("CEH LLC").

17. Skadden has also assisted the Debtors in the preparation of these chapter 11 cases, as well as the various first day motions and other documents and pleadings necessary for the successful filing of these cases and reorganization of the Debtors' businesses. Skadden has become familiar with the Debtors' business affairs and many of the potential legal issues that may arise in the context of the Debtors' chapter 11 cases.

18. The Debtors believe that continued representation by Skadden, their prepetition restructuring and bankruptcy counsel, is critical to the Debtors' efforts to restructure their businesses because Skadden has become extremely familiar with the Debtors' businesses and legal and financial affairs and, accordingly, is well-suited to guide the Debtors through the chapter 11 process.

19. The Debtors have selected Skadden as their attorneys because of the firm's prepetition experience with, and knowledge of, the Debtors and their businesses, as well as its experience and knowledge in the field of

debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code.

20. The Debtors desire to employ Skadden under a general retainer because of the extensive legal services that will be required in connection with these cases and the Firm's familiarity with the Debtors' businesses. As noted above, the Debtors believe that Skadden is well qualified and uniquely able to act on the Debtors' behalf.

21. Skadden has informed the Debtors that additional information regarding Skadden's qualifications is more fully set forth in the Milmoe Declaration, executed on behalf of Skadden in accordance with Bankruptcy Code sections 327(a) and 329, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, filed herewith, and incorporated herein by reference.

**SERVICES TO BE RENDERED**

22. The services of attorneys under a general retainer are necessary to enable the Debtors to execute faithfully their duties as debtors-in-possession. Subject to further order of this Court, Skadden will be required to render various services to the Debtors including, among others, the following:

8

(a) advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their businesses and properties;

(b) attend meetings and negotiate with representatives of creditors and other parties in interest and advising and consulting on the conduct of the case, including all of the legal and administrative requirements of operating in chapter 11;

(c) take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against those estates, negotiations concerning litigation in which the Debtors may be involved (other than matters with respect to which the Debtors have looked to other counsel), and objections to claims filed against the estates;

(d) prepare on behalf of the Debtors motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(e) negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s), and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(f) advise the Debtors in connection with any sale of assets;

(g) appear before this Court, any appellate courts, and the U.S. Trustee and protecting the interests of the Debtors' estates before such courts and the U.S. Trustee;

(h) continue to assist the Debtors with their efforts to consummate the Merger Agreement,

> as well as any further negotiations or modifications thereto; and
>
> (i) perform other necessary legal services and providing other necessary legal advice to the Debtors in connection with these chapter 11 cases.

23. Skadden understands that the Debtors are planning on filing retention applications for other professionals in these cases and has informed the Debtors that it will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in these cases.

24. Given the size, complexity, and scope of their businesses, and the large number of parties in interest, the Debtors believe that it is necessary and essential that they, as debtors-in-possession, employ attorneys under a general retainer to render the foregoing professional services. Therefore, the Debtors have requested that Skadden perform the services set forth herein.

25. Subject to this Court's approval of this application, Skadden has indicated that it is willing to serve as the Debtors' reorganization counsel to perform the services described above.

**DISINTERESTEDNESS OF PROFESSIONALS**

26. To the best of the Debtors' knowledge,[1] and except as otherwise set forth herein and in the accompanying Milmoe Declaration, the members, counsel, and associates of Skadden (a) do not have any connection with any of the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, the United States Trustee for the District of Delaware or any person employed in the office thereof, or any judge in the Bankruptcy Court or District Court for the District of Delaware or any person employed in the offices thereof, (b) are "disinterested persons," as that term is defined in Bankruptcy Code section 101(14), and (c) do not hold or represent any interest adverse to the estates.

27. As set forth in the Milmoe Declaration, Skadden has in the past represented, currently represents, and likely in the future will represent certain parties in interest in these cases in matters unrelated (except as otherwise noted) to the Debtors, the Debtors'

---

[1] The Debtors' knowledge regarding the matters set forth in this application is based on, and the statements made herein are in reliance upon, the Milmoe Declaration.

11

chapter 11 cases, or such entities' claims against or interests in the Debtors.

28. Except as otherwise set forth in the Milmoe Declaration:

- (a) Neither Skadden nor any attorney at the Firm holds or represents an interest adverse to the Debtors' estates.

- (b) Neither Skadden nor any attorney at the Firm is or was a creditor, an equity security holder, or an insider of the Debtors, except that Skadden previously has rendered legal services to the Debtors for which it has been compensated as disclosed below.

- (c) Neither Skadden nor any attorney at the Firm is or was an investment banker for any outstanding security of the Debtors.

- (d) Neither Skadden nor any attorney at the Firm is or was, within three years before the Petition Date, an investment banker for a security of the Debtors, or an attorney for an investment banker in connection with the offer, sale, or issuance of any security of the Debtors.

- (e) Neither Skadden nor any attorney at the Firm is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors or of an investment banker of the Debtors.

- (f) Skadden does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker specified in the foregoing paragraphs, or for any other reason.

29. In view of the foregoing, the Debtors believe that Skadden is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b).

**PROFESSIONAL COMPENSATION**

30. In accordance with the Engagement Agreement, the Debtors retained Skadden to, among other things, advise them regarding their financial and operational restructuring efforts and to represent the Debtors as debtors-in-possession if chapter 11 cases were commenced.

31. In connection with entry into the Engagement Agreement, on June 10, 2003, the Debtors paid Skadden a $400,000 retainer for professional services and expenses charged by Skadden. Under the terms of the Engagement Agreement, the retainer was increased to $600,000 on October 22, 2003. Before the filing of the Debtors' chapter 11 cases, Skadden submitted invoices to the Debtors on a regular, periodic basis, for professional fees and expenses, including estimated unposted professional fees and expenses through the Petition Date. With respect to these invoices, in the ordinary course of business, the Debtors paid in the aggregate the sum of $4,344,860.47 for services rendered and as reimbursement

13

for charges and disbursements, all of which was attributable to legal services performed and charges and disbursements incurred in contemplation of or in connection with these cases. The details of Skadden's periodic invoices and corresponding company payments are set forth in the Milmoe Declaration.

32. As promptly as practicable after all fees and charges accrued prior to the Petition Date have been finally posted within Skadden's computerized billing system (the "Final Billed Amount"), Skadden will issue a final billing statement for the actual fees, charges, and disbursements incurred for the period prior to the Petition Date. The Final Billed Amount (net of payments received) shall be paid from amounts presently held by Skadden and the balance will be held as a postpetition retainer to be applied against any unpaid fees and expenses approved by the Court with respect to Skadden's final fee application in these cases.

33. Under the Engagement Agreement, and as set forth herein, Skadden will apply to this Court for compensation and reimbursement of expenses.

34. For professional services, Skadden's fees are based in part on its guideline hourly rates, which are periodically adjusted. Based upon the Engagement

Agreement, Skadden and the Debtors have agreed that Skadden's bundled rate structure described in the Engagement Agreement will apply to these cases.

35.  Presently, the hourly rates under the bundled rate structure range from $495-$725 for partners and of-counsel, $240-$485 for associates and counsel, and $80-$195 for legal assistants and support staff.  These hourly rates are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of a particular professional.

36.  Consistent with the Firm's policy with respect to its other clients, Skadden will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings.

37.  Charges and disbursements are invoiced pursuant to Skadden's Policy Statement Concerning Charges and Disbursements Under Standard Bundled Rate Structure, a copy of which is attached to the Engagement Agreement.

38. Skadden has agreed to accept as compensation such sums as may be allowed by the Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues, or tasks addressed in these cases.

39. Other than as set forth above and in the Milmoe Declaration, no arrangement is proposed between the Debtors and Skadden for compensation to be paid in these cases.

40. Except for such sharing arrangements among Skadden, its affiliated law practice entities, and their respective members, Skadden has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to employ and retain the firm of Skadden as the Debtors' attorneys under a general retainer to perform the legal services that will be necessary during their chapter 11

cases, effective as of the Petition Date, and (ii) granting such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      December 12, 2003

                  AURORA FOODS INC.
                  SEA COAST FOODS, INC.

                  Debtors-in-Possession

                  By:  /s/ Ronald B. Hutchison
                        Ronald B. Hutchison
                        Chief Restructuring Officer
                        and Assistant Secretary