**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 03-13744 (MFW) |
| AURORA FOODS INC., et. al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Objections due: August 19, 2004 at 4:00 p.m.** |
| | : | **Hearing Date: August 26, 2004 at 11:30 a.m.** |

## MOTION FOR RELIEF FROM DISCHARGE INJUNCTION

Milwaukee Electric Tool Corporation ("MET"), by and through undersigned counsel hereby respectfully moves (the "Motion") for an order granting relief from the injunction provision contained in paragraph 12 of the Confirmation Order (defined hereafter) to liquidate its state law claims against Aurora Foods, Inc. ("Aurora"). In support of this Motion, MET respectfully represents the following:

### Background

A. The Workers' Compensation Action

1. On or about June 30, 2002, Larry N. Lewis (the "Plaintiff")claims to have suffered an injury (the "Accident") to his left wrist and/or forearm while allegedly using a die grinder manufactured by MET during the course and scope of his employment with Aurora, one of the above captioned debtors and debtors in possession (the "Debtors").

2. On or about February 10, 2003, the Plaintiff commenced an action (the "Workers' Compensation Case") against Aurora by filing a Complaint for Workers' Compensation in the Chancery Court of Madison County, Tennessee at Jackson (the "Chancery Court").

3. On or about July 2, 2003, the Plaintiff and Aurora filed a Joint Petition for Approval of Settlement Under Workers' Compensation Law of the State of Tennessee seeking approval of a settlement of the Plaintiff's claims in the Workers' Compensation Case. On or about July 2, 2003, the Chancery Court entered an order approving the settlement.

4. Upon information and belief, Aurora paid to or for the benefit of the Plaintiff the sum of approximate $106,000.00 in workers' compensation benefits and has subrogation rights with respect to any claim that the Plaintiff may have against MET.

B. The District Court Action

5. On or about June 13, 2003, the Plaintiff commenced an action (the "District Court Action") against MET by filing a complaint in the United States District Court for the Western District of Tennessee (the "District Court") asserting claims allegedly resulting from the Plaintiff's use of the die grinder during the Accident. Presently, the parties are engaged in discovery in the District Court Action.

6. During the period from January 13 through 21, 2004, the parties took several depositions of fact witnesses in the District Court Action. During the depositions, MET learned that Aurora had intentionally and/or negligently destroyed the die grinder allegedly used by the Plaintiff at the time of the Accident before MET had an opportunity to inspect the die grinder.

7. On February 9, 2004, MET filed a Motion for Leave to File and Serve Third Party Complaint and to Extend the Deadline Under the Scheduling Order for Adding Parties (the "Motion for Leave") seeking, *inter alia*, an order granting leave to file a third party complaint against Aurora asserting that Aurora is liable to MET for any

amounts that MET is required to pay the Plaintiff because of the intentional and/or negligent destruction of the die grinder.

8. On June 25, 2004, the District Court entered an Order in which the District Court, *inter alia*, granted the Motion for Leave and directed MET to seek relief from the automatic stay from the Bankruptcy Court within 20 days from the entry of the Order.

C. The Bankruptcy Case

9. On December 8, 2003, the Debtors filed their petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankrutpcy Court for the District of Delaware (the "Bankruptcy Court").

10. On or about January 9, 2004, the Debtors filed the First Amneded Joint Reorganization Plan of Aurora Foods Inc. And Sea Coast Foods, Inc. (the "Plan").

11. Article X, provission 10.3 of the Plan provides as follows:

> Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims *(other than those Claims that are Unimpaired Claim [sic] under this Plan)* of any nature whatsoever against the Detbors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained under this Plan on account of such Claims. Upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under this section 1141(d)(1)(A) of the Bankrutpcy Code from any and all Claims *(other than Claims that are not Impaired)*, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the Interests shall be terminated." (emphasis added)

12. Article I, provision 1.112 of the Plan provides that Unimpaired Unsecured Claims means a Claim that is not an Administrative Claim, Priority Tax Claim, Non-Tax

Priority Calim, Other Secured Claim, Prepetition Lender Claim, Prepetition Senior Unsecured Note Claim, Sub Debt Claim or Subordinated Claim.

13. On February 20, 2004, the Court entered the Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming First Amended Joint Reorganization Plan of Aurora Foods Inc. And Sea Coast Foods, Inc., as Modified (the "Confirmation Order") in which the Court confirmed the Plan. The Plan became effective on March 19, 2004

14. Paragraph 12 of the Confirmation Order provides as follows:

> Injunction. *Except as otherwise specifically provided in the Plan* and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors, and all Persons who have held, hold, or may hold Claims or Interests and any successors, assigns, or representatives of the foregoing shall be precluded and permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date,... (emphasis added)

15. Upon information and belief, no deadline to file pre-petition claims has been set in the Debtors' cases to date.

16. Upon information and belief, MET was not served with notice of the Debtors' bankruptcy filing, the filing of the Plan, the confirmation hearing or the Confirmation Order. Further, MET did not receive service of any of the filings in the Debtors' bankruptcy cases.

**Relief Requested**

17. By this Motion out of an abundance of caution, MET seeks the entry of an order granting relief from the injunction provision of paragraph 12 of the Confirmation Order so that it may file a third party complaint against Aurora in the District Court Action to liquidate its state law claims against Aurora.

**Argument**

A. MET's Claims Are Not Subject To The Discharge Injunction

18. MET has pre-petition state law claims against Aurora rising from Aurora's intentional and/or negligent destruction of the die grinder. Provision 1.112 of the Plan provides that MET's claims against Aurora constitute Unimpaired Unsecured Claims. Provision 10.3 of the Plan provides that the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankrutpcy Code from any and all Claims, *other than Claims that are not Impaired.* Thus, MET's claims were not discharged under the Plan and Confirmation Order.

19. Section 542(a)(2) of the Bankruptcy Code provides that a discharge in a case operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. 11 U.S.C.A. § 524(a)(2). Because MET's claims against Aurora were not discharged, MET is not subject to the discharge injunction under section 524(a)(2) of the Bankruptcy Code.

20. Moreover, the Confirmation Order provides, *inter alia*, that all persons shall be permanently enjoined on and after the Effective Date from commencing or continuing in any manner any Claim, action, or other proceeding of any kind with respect

to any Claim, *except as otherwise specifically provided in the Plan*. Presumably, this qualifying language in the injunction provision is intended to exempt non-discharged unimpaired claims from the injunction.

B. <u>MET Should Be Granted Relief From The Injunction Provision In The Confirmation Order.</u>

21. Nonetheless, assuming *arguendo* that the injunction provision in the Confirmation Order applies to MET's claims, MET should be granted relief from the injunction provision so that it may file a third party complaint against Aurora in the District Court Action to liquidate its claims against Aurora.

22. The Debtors will not be prejudiced if MET is granted relief from the injunction provision to file the third party complaint and liquidate its state law claims against Aurora. First, the District Court Action is the most expeditious way to accomplish a quantification of MET's claims. In addition, the Debtors' participation in the District Court Action will not burden the estates financially because MET's claims must be liquidated at some point. Further, Aurora is aware of the District Court Action and counsel for Aurora was present at all of the depositions taken in the District Court Action, with the excpetion of one. Finally, the liquidation of MET's claims against Aurora in the District Court Action is more appropriate and promotes judicial economy because all issues between the parties will be decided in the same proceeding and will allow the Debtors to participate in a proceeding which may have an impact on its suborgation rights.

23. In contrast, MET will suffer significant prejudice if relief from the injunction provision is not granted. First, it would be burdensome for MET to be required to litigate its claims against Aurora in Delaware. Most of the witnesses,

documents and lawyers are located in Tennessee. Furthermore, MET has already retained Tennessee counsel and begun defending and litigating the District Court Action. Increasing MET's litigation expenses even further by requiring it to start over in Delaware or to litigate a second trial against the Debtors in the District Court would be unjust and unnecessary. This prejudice and burden to MET should be avoided.

24. Liquidation of the Plaintiffs' claims in the District Court Action is the most efficacious and the least burdensome and costly manner for resolving the claims for MET, as well as for the Debtors. Granting relief from the injunction provision will prevent any unnecessary duplicative proceedings in the Bankruptcy Court. As discussed above, liquidating MET's claims in the District Court Action creates little or no hardship to the Debtors. The Debtors will not be prejudiced by liquidating such claims in the District Court Action and the relative hardships weigh heavily in favor of MET. Therefore, allowing the liquidation of the MET's claims in the pending District Court Action would best serve to conserve judicial resources.

25. Based on the foregoing, the Court should grant relief from the injunction provision in the Confirmation Order to permit MET to file a third party complaint against Aurora to liquidate its state law claims.

WHEREFORE, MET respectfully requests this Court enter an order granting relief from the injunction provision of the Confirmation Order to allow MET to commence a third party proceeding against Aurora in the District Court Action and granting such other and further relief as this Court seems just and proper.

Dated: July 15, 2004

THE BAYARD FIRM

Charlene B. Davis (No. 2336)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
302-655-5000

\- and -

Patrick W. Rogers, Esquire
Rainey, Kizer, Reviere & Bell, P.L.C.
P.O. Box 1147
Jackson, Tennessee 38302-1147
(731) 423-2414

Attorneys for Milwaukee Electric Tool Corporation